FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

OCT 13 2006

JAMES N. HATTEN, CLERK
By: [signature] Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J.W. LEDFORD, JR.,

      Petitioner,

v.

FREDRICK HEAD, Warden, Georgia
Diagnostic and Classification
Prison,

      Respondent.

CIVIL ACTION NO.

1:02-CV-1515-JEC

### ORDER AND OPINION

The Court recently requested briefing from the parties to determine whether to grant an evidentiary hearing on petitioner's mental health claims. (Order [32].) The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that an evidentiary hearing is warranted on the following limited issues: 1) whether petitioner is mentally retarded; and 2) whether petitioner's trial attorneys were unreasonable in failing to investigate and present evidence of petitioner's mental retardation.

### BACKGROUND

In 1992, petitioner was convicted on charges of malice murder, armed robbery, burglary, and kidnapping in the Superior Court of

Murray County, Georgia. He was sentenced to death for the murder conviction.[1]

Georgia law has prohibited execution of the mentally retarded since 1988. See O.C.G.A. § 17-7-131(j). Before his trial, petitioner was evaluated by a court-appointed expert who determined that he had a "borderline" IQ in the 70 to 80 range. However, petitioner's trial counsel did not further investigate whether petitioner was mentally retarded, and did not present any evidence or argument on mental retardation in the sentencing phase of the trial.

Petitioner's trial attorneys appealed his conviction to the Georgia Supreme Court, which affirmed the conviction and sentence. *Ledford v. State*, 264 Ga. 60, 439 S.E.2d 917 (1994). The attorneys then filed a petition for writ of certiorari in the United States Supreme Court, which denied the petition. *Ledford v. Georgia*, 513 U.S. 1085, *reh'g denied*, 513 U.S. 1199 (1995). The attorneys did not raise the mental retardation issue in either of these proceedings.

Petitioner subsequently obtained new counsel and filed a state habeas corpus petition. Petitioner asserted numerous grounds for

---

[1] He was also given a life sentence for the armed robbery of Harry Buchanan Johnston, Jr., a consecutive life sentence for the armed robbery of Antoinette Logan Johnston, a 20-year sentence for burglary to run concurrent with the life sentence imposed for the armed robbery of Antoinette Logan Johnston, and a 20-year sentence for kidnapping to run concurrent with the life sentence imposed for the armed robbery of Antoinette Logan Johnston.

2

relief in the state habeas court, including: 1) a claim for ineffective assistance of counsel based on trial counsel's failure to investigate and present evidence of mental retardation; and 2) a claim that Georgia law prohibited petitioner's execution because he is mentally retarded. In support of these claims, petitioner presented affidavits of Drs. Herendeen, Fiester, and Zimmerman showing that petitioner's IQ is below 70, and that he is mentally retarded. The state habeas court excluded these affidavits without explanation, and rejected petitioner's ineffective assistance and mental retardation claims.[2] The Georgia Supreme Court denied petitioner's application for a certificate of probable cause to appeal the state habeas court's decision.

Petitioner filed this petition for writ of federal habeas corpus on April 30, 2002. (Petition [1].) In his federal petition, petitioner asserted a Sixth Amendment claim for ineffective assistance of counsel based on trial counsel's failure to investigate and present evidence of mental retardation. (Amended Petition [17].)[3] Petitioner also alleged that his execution would violate the Eighth Amendment, as he is mentally retarded. (*Id.*)

---

[2] The state habeas court excluded Dr. Zimmerman's supplemental affidavit in its entirety on the ground that petitioner failed to provide 10 days notice to respondent, as required by O.C.G.A. § 9-14-48(c).

[3] Petitioner filed an amended petition [17] on February 28, 2003.

3

Petitioner sought leave to conduct discovery on several issues, including his mental retardation claims. (Petitioner's Motion for Leave to Conduct Discovery [19]). The Court denied the motion, but indicated in its Order that it was troubled by the state habeas court's complete exclusion of the affidavits submitted by petitioner. The Court requested briefing from the parties to determine whether to grant an evidentiary hearing on the mental retardation issue. After reviewing the record and the arguments of the parties, the Court finds that an evidentiary hearing is warranted.

## DISCUSSION

### I. EVIDENTIARY HEARINGS UNDER THE AEDPA

Prior to Congress's passage of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), district courts were required to grant an evidentiary hearing to a habeas petitioner in certain circumstances, including cases where the state court "did not afford the habeas applicant a full and fair fact hearing." *Townsend v. Sain,* 372 U.S. 293, 313 (1963)(overruled in part by *Keeney v. Tamayo-Reyes,* 504 U.S. 1, 5 (1992)). In all other situations, the court had discretion to determine whether to grant a hearing. *See Townsend,* 372 U.S. at 311, 318-19 (noting that where an evidentiary hearing is not mandatory, the district judge is "constrained only by his sound discretion to receive evidence bearing upon the applicant's constitutional claim"), and *Kelley v. Sec'y for Dep't of Corr.,* 377

4

F.3d 1317, 1334 (11th Cir. 2004)(discussing the district courts' broad discretion to grant evidentiary hearings under pre-AEDPA law).

The AEDPA "modified the discretion afforded to the district court and erected additional barriers limiting a habeas petitioner's right to . . . an evidentiary hearing." *Isaacs v. Head*, 300 F.3d 1232, 1248-49 (11th Cir. 2002). Specifically, § 2254 (e)(2) of the AEDPA precludes evidentiary hearings, except in limited circumstances, where the petitioner has "failed to develop" the record on his claim in state court. Section 2254 (e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254 (e)(2). Thus, § 2254 (e)(2) generally bars an evidentiary hearing when a habeas petitioner "has not been

5

sufficiently diligent in his efforts to develop a record in state courts." *Isaacs*, 300 F.3d at 1249 (citing *Williams v. Taylor*, 529 U.S. 420, 433-34 (2000)).

Even when an evidentiary hearing is not barred by § 2254(e)(2), the Court must still consider whether a hearing is warranted. *Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002) (holding that, where an evidentiary hearing is not barred by § 2254(e)(2), it is still appropriate to deny a hearing if it would not assist in the resolution of petitioner's claim)(citing *Bolender v. Singletary*, 16 F.3d 1547, 1555 n. 9 (11th Cir. 1994)). The AEDPA "establishes a highly deferential standard for reviewing state court judgments." *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005)(quoting *Parker v. Sec'y for Dept. of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003)). A state court's factual determinations are "presumed correct unless rebutted by clear and convincing evidence." *Id.* Moreover, the Court cannot grant habeas relief unless the state court's decision was: 1) contrary to, or involved an unreasonable application of, clearly established federal law; or 2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[4] *Id.*; 28 U.S.C. § 2254(d).

---

[4] A state court decision is "contrary to" clearly established federal law if either: 1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law; or 2) when faced with materially indistinguishable facts, the state

An evidentiary hearing is only warranted if petitioner alleges facts that would entitle him to relief under this exacting standard. *Breedlove*, 279 F.3d at 961.

## II. PETITIONER'S CLAIMS BASED ON MENTAL RETARDATION

Applying the above standard, the Court must first determine whether § 2254(e)(2) precludes an evidentiary hearing on petitioner's mental retardation claims. *Id.* at 960. If not, the Court must decide whether a hearing would assist in resolving petitioner's claims. *Id.* Petitioner is entitled to an evidentiary hearing if he alleges facts that, if proved at the hearing, would entitle him to relief under the AEDPA. *Id.*

Respondent concedes that the AEDPA does not preclude a hearing on petitioner's mental retardation claims. (Respondent's Response to Petitioner's Brief on Mental Health Claims "Response"[34] at 10.) Section 2254(e)(2) does not apply unless "there is lack of diligence, or some greater fault, attributable to [petitioner] or [his] counsel." *Williams*, 529 U.S. at 432. *See also, Hall v. Head*, 310 F.3d 683, 697 (11th Cir. 2002)("§ 2254(e)(2) applies where a petitioner has not diligently sought the opportunity to develop

---

court arrived at a result different from that reached in a Supreme Court case. *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. *Id.* at 1293.

evidence in a state hearing"). Diligence, in this context, requires only "a reasonable attempt, in light of information available at the time, to investigate and pursue claims in state court." *Williams*, 529 U.S. at 435; *McNair*, 416 F.3d at 1298.

Respondent acknowledges that petitioner attempted to "present[] his ineffective assistance/mental health evidence in various evidentiary forms in the state habeas corpus proceeding." (Response at 10.) Petitioner's attempts were thwarted by the state habeas court's exclusion of the evidence supporting petitioner's claims. Accordingly, § 2254(e)(2) does not apply. *Breedlove*, 279 F.3d at 960 ("a petitioner cannot be said to have 'failed to develop' relevant facts if he diligently sought, but was denied, the opportunity to present evidence"); *Williams*, 529 U.S. at 432; *Isaacs*, 300 F.3d at 1248-49.

Respondent contends, however, that an evidentiary hearing will not assist the Court in resolving petitioner's mental retardation and ineffective assistance claims. (Response [34] at 2, 13.) The Court does not agree.

### A. Petitioner's Ineffective Assistance of Counsel Claim

Petitioner's ineffective assistance of counsel claim is governed by the familiar *Strickland* standard. *Hall v. Head*, 310 F.3d 683, 691 (11th Cir. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To prevail under *Strickland*, petitioner must show that: 1)

8

his counsel's performance failed to meet the standard of a reasonably competent attorney; and 2) the deficient performance prejudiced his defense. *Id.* *See also, McNair,* 416 F.3d at 1301 (applying the *Strickland* standard in a habeas corpus case). "Scrutiny of counsel's performance is highly deferential, and the burden is on the [petitioner] to show that counsel's performance was unreasonable." *McNair,* 416 F.3d at 1301.

The state habeas court found that "trial counsel's decision not to raise or investigate the issue of mental retardation was not unreasonable." (State Habeas Order at 26, attached to Respondent's Answer to Amended Petition [18] at Ex. 52.) To resolve petitioner's federal habeas petition, the Court must determine whether this finding was "contrary to or involved an unreasonable application of, clearly established federal law" or was "based on an unreasonable determination of the facts." *McNair,* 416 F.3d at 1301.

The state habeas court's decision is not "contrary to" established federal law governing ineffective assistance of counsel. The state court cited *Strickland,* and correctly identified the elements of a successful claim for ineffective assistance of counsel under the *Strickland* standard. (State Habeas Order at 17-18.) The state court's decision thus "easily satisfies the 'contrary to' clause of § 2254(d)(1)." *Breedlove,* 279 F.3d at 962.

However, the Court cannot determine from the record whether the

9

state court unreasonably applied the *Strickland* standard, or whether its conclusions are based on an unreasonable determination of the facts. Petitioner offered three expert affidavits suggesting that he is mentally retarded, which the state habeas court, without offering any explanation, summarily "deemed inadmissible." (Order on Admissibility of Evidence, attached to Respondent's Answer to Amended Petition [18] at Ex. 40.) Focusing on the expert testimony presented at petitioner's trial, the state court concluded: "after comprehensive psychological testing and evaluation, both Dr. Perri (the court-appointed expert) and Dr. Herendeen (the defense expert) found that [petitioner's] IQ fell within the borderline and low average range of intelligence and concluded that [petitioner] was not mentally retarded." (Habeas Order at 26.)

After a careful review of the record, the Court finds this conclusion somewhat questionable. Although both Dr. Perri and Dr. Herendeen performed some type of intelligence testing, it does not appear that either expert was asked or offered to make a specific determination on the issue of mental retardation. Certainly neither of the experts addressed the relevant standard for mental retardation under Georgia law, which defines mental retardation as follows:

> "Mentally retarded" means having significantly subaverage general intellectual functioning resulting in or associated with impairments in adaptive behavior which manifested during the developmental period.

10

O.C.G.A. § 17-7-131(a)(3).

Dr. Perri determined that petitioner's IQ was in the 70 to 80 "borderline" range, a result that would seem to suggest to a reasonable attorney a need for further investigation as to whether petitioner's intelligence was "significantly subaverage." *See Atkins v. Virginia*, 536 U.S. 304, 309, n. 3 (2002) (citing the American Psychiatric Association's categorization of people with an IQ level of 55 to approximately 70 as mildly mentally retarded). This is particularly true where, as the state habeas court recognized later in its order: "At best, an IQ score is only accurate within a range of several points, and for a variety of reasons, a particular score may be less accurate." (Habeas Order at 57.) However, petitioner's attorneys never investigated the matter further, and never requested that Dr. Perri make a specific determination on the statutory factors relevant to mental retardation.

Dr. Herendeen determined that petitioner's IQ was 85, but he subsequently testified by affidavit that he did not have sufficient time to properly evaluate petitioner. (Herendeen Aff., attached to Respondent's Answer [18] at Ex. 43.) Specifically, Dr. Herendeen testified that he estimated petitioner's IQ based on the Shipley Institute of Living Scale, but that he did not have time to administer a standardized intelligence test, or to fully investigate petitioner's adaptive functioning skills. (*Id.*) The reason for Dr.

11

Herendeen's rushed evaluation is directly relevant to petitioner's ineffective assistance of counsel claim: petitioner's trial counsel retained Dr. Herendeen a week before trial, and Dr. Herendeen was unable to evaluate petitioner until the day before trial. (*Id.*) Again, however, the state habeas court excluded Dr. Herendeen's testimony.

At the time of petitioner's trial, Georgia law absolutely barred execution of a mentally retarded defendant. See O.C.G.A. § 17-7-131(j). Nevertheless, the state habeas court determined that trial counsel's "decision not to raise or investigate the issue of mental retardation was not unreasonable" given Dr. Perri and Dr. Herendeen's findings, "both of which indicated that [petitioner] was not mentally retarded or mentally incompetent to stand trial." (Habeas Order at 27.) Drs. Perri and Herendeen did indicate that petitioner was mentally competent to stand trial, but the standard for mental retardation is different than the standard for competence. See *Atkins*, 536 U.S. at 318 ("Mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial. Because of their impairments, however, by definition they have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others.").

In denying the mental retardation portion of petitioner's ineffective assistance claim, the state habeas court relied entirely on the opinions and testimony of Dr. Perri and Dr. Herendeen. (State Habeas Order at 26-27.) However, neither expert specifically addressed the statutory factors relevant to mental retardation, and Dr. Herendeen subsequently testified that he did not have sufficient time to accurately assess petitioner's mental functioning. (Herendeen Aff., attached to Respondent's Answer [18] at Ex. 43.) Under the circumstances, an evidentiary hearing will help the Court determine whether it was unreasonable for his trial attorneys to fail to investigate or raise the issue of mental retardation. *See Bolender,* 16 F.3d at 1557 ("The failure to conduct a reasonable investigation into possible mitigating circumstances may render counsel's assistance ineffective.") (citing *Lightbourne v. Dugger,* 829 F.2d 1012, 1025 (11th Cir. 1987)).

Likewise, an evidentiary hearing will help the Court apply the prejudice prong of the *Strickland* test. To show prejudice, petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hall,* 310 F.3d at 694 (quoting *Strickland,* 466 U.S. at 694). *See also, Jones,* 436 F.3d at 1299 (discussing the prejudice prong of the *Strickland* standard). "When challenging the imposition of the death penalty, 'the question is whether there is a

reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Bolender*, 16 F.3d at 1560-61.

Again, at the time of petitioner's trial, Georgia law absolutely barred execution of the mentally retarded. O.C.G.A. 17-7-131(j). The Court cannot determine from this record whether petitioner is mentally retarded. If he is not retarded, his attorneys' failure to investigate and raise the issue would not be prejudicial, and his ineffective assistance claim will fail. On the other hand, if petitioner is retarded, then he was not eligible for the death penalty under Georgia law. In that case, his attorneys' failure to investigate and raise the issue would clearly be prejudicial.

**B.    Petitioner's *Atkins* Claim**

In *Atkins v. Virginia*, the United States Supreme Court established a federal constitutional rule categorically excluding the mentally retarded from execution. *Atkins*, 536 U.S. at 318-19, 321. See also, *Ferrell v. Head*, 398 F. Supp. 2d 1273, 1295 (N.D. Ga. 2005)(Thrash, J.)(applying the *Atkins* rule in a federal habeas proceeding). The *Atkins* Court left to the states "the task of developing appropriate ways to enforce the constitutional restriction." *Atkins*, 536 at 317. Accordingly, state law governs the procedure for determining whether a defendant is mentally retarded, and thus ineligible for the death penalty. *Ferrell*, 398

14

F.Supp. 2d at 1295 (citing *Atkins*, 536 U.S. at 317).

As discussed, Georgia defines "mentally retarded" as "significantly subaverage general intellectual functioning resulting in or associated with impairments in adaptive behavior which manifested during the developmental period." O.C.G.A. § 17-7-131(a)(3); *Ferrell*, 398 F.Supp. 2d at 1295-96 (applying Georgia's standard for determining mental retardation). After excluding all of the evidence petitioner asserted in favor of his mental retardation claim, the state habeas court determined that petitioner was not mentally retarded. (State Habeas Order at 57.)

As an initial matter, the basis of the state habeas court's determination is unclear. The state court noted that one of the trial experts found petitioner's IQ to be between 70 and 80, and classified him as "borderline." (*Id.*) The court also mentioned that the defense expert who evaluated petitioner estimated his IQ to be 85. (*Id.*) However, Georgia law does not employ a strict numerical cut-off for mental retardation. See O.C.G.A. § 17-7-131(a)(3). As discussed, neither expert addressed the statutory factors relevant to mental retardation under O.C.G.A. § 17-7-131(a)(3).

Moreover, Dr. Herendeen, who initially determined that petitioner's IQ was 85, subsequently submitted an affidavit stating that he did not have sufficient time to properly evaluate petitioner. (Herendeen Aff.) Dr. Herendeen's later testimony, which the state

15

habeas excluded without explanation, casts doubt on his earlier estimate of petitioner's level of intellectual functioning. (Order on Admissibility of Evidence, attached to Respondent's Answer to Amended Petition [18] at Ex. 40.)

Petitioner has produced the affidavits of two experts concluding that he is mentally retarded. Respondent has not presented any evidence to contradict these affidavits. An evidentiary hearing will give petitioner an opportunity to prove that he is mentally retarded, and will give respondent an opportunity to rebut any evidence petitioner produces. Given the state of the record on the mental retardation issue, a hearing will assist the Court in resolving petitioner's *Atkins* claim. *See Breedlove,* 279 F.3d at 960.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** petitioner's request for an evidentiary hearing on his mental retardation claims. An evidentiary hearing will be held on **Friday, December 8, 2006, 10:00 a.m., Courtroom 2107.**

SO ORDERED, this _13_ day of October, 2006.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

16